Brandon J. Tittle
Texas Bar No. 24090436
Manolo R. Santiago
Texas Bar No. 24129258
**TITTLE SANTIAGO, PLLC**
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034
Telephone: 972.213.2316
Email: btittle@tittlesantiago.com
Email: msantiago@tittlesantiago.com

**PROPOSED COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 26-60765** |
| **DOUBLE D SOLUTIONS AND** | § | |
| **DEVELOPMENT, LLC,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **Debtor.** | § | |

**DEBTOR'S EMERGENCY MOTION FOR AN INTERIM AND FINAL ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL OF EXISTING SECURED LENDER, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, (III) MODIFYING THE AUTOMATIC STAY TO ALLOW FOR THE RELIEF REQUESTED HEREIN AND (IV) SCHEDULING FINAL HEARING**

Double D Solutions and Development, LLC, the debtor and debtor-in-possession in the above-captioned case (the "Debtor"), moves (the "Motion") for entry of an interim order (the "Interim Order") and, after appropriate notice and a final hearing, a final order (the "Final Order") under sections 105(a), 361, 363, 507(b), 552, 1107(a), 1108, and 1184 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 4001(b), 6003, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Appendix L-1020.2-1 of the Procedures for Subchapter V Cases Filed in the Western District of Texas (the "Subchapter V Procedures"), authorizing the Debtor to use Cash Collateral, as defined below, in accordance with its cash-flow budget; granting narrowly tailored adequate protection to parties that establish valid, perfected

prepetition interests in the Cash Collateral; and scheduling a final hearing. In support of the Motion, the Debtor respectfully represents as follows:

## PRELIMINARY STATEMENT AND RULE 4001(b)(1)(B) SUMMARY

1. The Debtor is an operating construction and remodeling company with approximately sixteen employees. Its business depends on the continued completion of active projects, collection of receivables, and payment of ordinary operating obligations. The Debtor has insufficient unencumbered liquidity to fund operations pending a final hearing. A representative weekly payroll reflects approximately $14,047.50 in gross compensation, $1,075.96 in employer payroll taxes, and $204.40 in employer benefit contributions, for an estimated weekly employer cash requirement of approximately $15,327.86 before ordinary payroll-processing costs. Without prompt authority to use Cash Collateral, the Debtor risks disruption of its workforce, projects, collections, and going-concern value.

2. The Debtor therefore requests interim authority to use Cash Collateral solely for the ordinary and necessary expenditures identified in the Debtor's interim cash-flow budget (the "Budget"), including amounts authorized by separate first-day orders. Attached hereto as **Exhibit A** is a true and correct copy of the Budget. The Budget is intended to satisfy the Subchapter V Procedures' requirement for a detailed weekly cash-flow projection covering at least the first thirty days. At least five days before the final hearing, the Debtor will file the separate monthly budget covering not less than 120 days required by Appendix L-1020.2-1, § II.C.3.

3. Based on the Debtor's books and records and the secured-creditor information provided to Debtor's counsel, the Debtor has identified the parties listed below as holding or asserting liens or other security interests in the Debtor's personal property (collectively, the "Personal Property Secured Creditors"). The approximate amounts shown are the amounts

reflected in the Debtor's current records and aggregate approximately $1,956,798.96. They are provided solely for notice and disclosure purposes and remain subject to reconciliation, proofs of claim, payoff information, and review of the operative loan, security, UCC, and other lien documents. The designation "Senior Secured" below reflects the Debtor's current internal classification and is not a stipulation concerning lien priority.

| **Personal Property Secured Creditor** | **Debt Type** | **Debtor's Current Classification** | **Approximate Amount** |
|---|---|---|---|
| Headway Capital | Credit Line | Secured | $103,000.00 |
| The First National Bank of McGregor (TFNB) | Mortgage & Equipment | Senior Secured | $619,111.00 |
| U.S. Small Business Administration (SBA) | SBA Loan | Senior Secured | $426,155.00 |
| G and G Funding Group LLC (G&G) | MCA | Secured | $187,847.84 |
| Cedar Advance | MCA | Secured | $128,250.00 |
| Forward Financing LLC | MCA | Secured | $328,747.85 |
| Fox Funding | MCA | Secured | $44,970.00 |
| Samson MCA LLC | MCA | Secured | $55,656.25 |
| Ocean Funding Corp. | MCA | Secured | $63,061.02 |
| **Total Amount Reflected in Debtor's Current Secured-Creditor List** | | | **$1,956,798.96** |

4. For purposes of this Motion only, "Potential Cash Collateral Claimants" means the Personal Property Secured Creditors identified above, but only to the extent a particular creditor establishes a valid, enforceable, and perfected prepetition lien or security interest in property constituting Cash Collateral. "Cash Collateral" has the meaning stated in Bankruptcy Code section 363(a) and includes only cash, deposit accounts, cash equivalents, collections of accounts and receivables, and identifiable proceeds in which another entity actually holds an interest. Because

the secured-creditor list does not itself establish the precise collateral covered by each asserted lien, the Debtor is providing notice to all Personal Property Secured Creditors out of an abundance of caution. Nothing herein admits that any creditor has a lien in Cash Collateral. Further, with respect to parties identified as merchant cash advance ("MCA") counterparties, nothing in this Motion is an admission that any MCA transaction constitutes a true sale, a loan, a secured financing, or any other particular form of transaction, or that any MCA counterparty owns any postpetition receivable or collection.

5. The material terms of the requested interim relief are summarized below, as required by Bankruptcy Rule 4001(b)(1)(B).

| Material Term | Summary | Location |
|---|---|---|
| **Use of Cash Collateral** | Budgeted ordinary and necessary operating and case-administration expenses, including employee obligations only if separately authorized by the Court. | Paras. 14–19, 23–24 |
| **Duration** | Interim use through entry of the Final Order or further Court order; final use only after the final hearing. | Paras. 18, 33–36 |
| **Replacement Liens** | Only to a claimant proving a valid perfected prepetition interest in Cash Collateral; limited to actual diminution and same-type postpetition collateral, preserving prepetition priority. | Paras. 25–27 |
| **Cash Adequate-Protection Payments** | None requested or proposed on an interim basis. | Para. 28 |
| **Section 507(b)** | No present allowance of a superpriority claim; statutory rights are preserved if adequate protection later proves inadequate. | Para. 29 |

| Material Term | Summary | Location |
|---|---|---|
| **Carve-Out** | Replacement liens are subject to Court-authorized Subchapter V trustee deposits/compensation and allowed Debtor professional fees and expenses. | Para. 30 |
| **Extraordinary Provisions** | No roll-up, cross-collateralization, priming lien, release, challenge waiver, avoidance-action lien, § 506(c) waiver, § 552(b) equities waiver, or waiver of estate claims. | Paras. 31–32 |
| **Final-Hearing Compliance** | Debtor will file the 120-day monthly budget and proposed Final Order/redline at least five days before the final hearing. | Paras. 35–36 |

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this Chapter 11 Case and the Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), and (O). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

7. The statutory and procedural predicates for the relief requested are Bankruptcy Code sections 105(a), 361, 363, 507(b), 552, 1107(a), 1108, and 1184; Bankruptcy Rules 4001(b), 6003, and 9014; and Appendix L-1020.2-1, § II.C of the Subchapter V Procedures

## BACKGROUND

### A. The Debtor and the Chapter 11 Case.

8. On the date the Debtor filed its voluntary petition for relief (the "Petition Date"), the Debtor commenced this case under chapter 11 of the Bankruptcy Code and elected to proceed under subchapter V. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Bankruptcy Code section 1184.

9. The Debtor was formed on July 17, 2018. It provides alteration and remodeling construction services, including custom woodwork and molding, for commercial, private, and municipal customers.

10. The Debtor experienced liquidity constraints resulting from slow-paying and delinquent customer accounts. Those collection delays impaired the Debtor's ability to satisfy obligations as they became due. The Debtor commenced this case to restructure its obligations while preserving the value of its operating business.

11. As of the Petition Date, the Debtor employs approximately sixteen employees. Their continued services are necessary to complete customer projects, generate and collect receivables, preserve customer relationships, and maintain the Debtor's going-concern value.

**B. Potential Interests in Cash Collateral.**

12. The Debtor's current secured-creditor list identifies Headway Capital; The First National Bank of McGregor ("TFNB"); the U.S. Small Business Administration ("SBA"); G and G Funding Group LLC; Cedar Advance; Forward Financing LLC; Fox Funding; Samson MCA LLC; and Ocean Funding Corp. as holding or asserting liens or security interests in personal property. TFNB and the SBA are presently classified in the Debtor's records as senior secured, while the remaining parties are classified as secured. The list reflects an aggregate amount of approximately $1,956,798.96. Several of the identified parties are MCA counterparties. The precise nature, extent, validity, perfection, and priority of each asserted interest—including whether and to what extent any asserted interest reaches accounts, receivables, deposit accounts, collections, or other Cash Collateral—remains subject to the operative documents, applicable law, and the lien searches required in this case.

13. The Debtor has not, by filing this Motion or by identifying a party as secured in its books and records, stipulated to the amount or allowance of any claim; the characterization of any MCA transaction; the existence, validity, enforceability, perfection, scope, or priority of any lien, security interest, ownership interest, or other asserted right; or the extent to which any asserted interest constitutes an interest in Cash Collateral. All such issues are expressly reserved. The Debtor will separately file the UCC lien search required by the Subchapter V Procedures and will supplement the parties receiving notice if that search or any other lien review identifies an additional party asserting an interest in Cash Collateral or proposed collateral, including a taxing authority.

**C. The Debtor's Immediate Need for Cash Collateral.**

14. The Debtor does not have sufficient unencumbered cash to fund its business pending the final hearing. The Debtor's primary source of liquidity is cash generated through its business operations, including collections of accounts and receivables that one or more Potential Cash Collateral Claimants may contend constitute their cash collateral.

15. The Debtor requires access to those funds to continue operating and to pay the ordinary and necessary expenditures reflected in the Budget. Those expenditures include the ordinary payroll and related Employee Obligations addressed in the Debtor's separate employee-wage motion and any order entered thereon. A representative weekly payroll reflects approximately $14,047.50 in gross compensation, approximately $1,075.96 in employer payroll taxes, and approximately $204.40 in employer benefit contributions.

16. If the Debtor cannot use Cash Collateral during the period before a final hearing, the Debtor risks being unable to maintain its workforce and ongoing projects, which would impair collections and materially reduce the value of the business and the collateral available for creditors.

Continued operations, by contrast, permit the Debtor to complete work, collect receivables, and preserve the going-concern value from which secured and unsecured creditors may recover.

17. The Debtor will limit its use of Cash Collateral to the expenditures reflected in the Budget and to expenditures otherwise specifically authorized by the Court. Nothing in the requested relief authorizes payment of a prepetition claim unless such payment is separately authorized by the Bankruptcy Code or an order of this Court.

## RELIEF REQUESTED

18. The Debtor requests entry of an Interim Order authorizing it to use Cash Collateral in accordance with the Budget pending the final hearing and, after the final hearing, entry of a Final Order authorizing continued use on the terms approved by the Court.

19. The Debtor further requests that the Interim Order grant adequate protection, solely to the extent required by Bankruptcy Code sections 361 and 363(e), to each Potential Cash Collateral Claimant that establishes a valid, enforceable, and perfected prepetition interest in Cash Collateral and demonstrates diminution in the value of that interest caused by the Debtor's authorized use. No Personal Property Secured Creditor is granted new or enhanced rights merely because it is listed in paragraph 3 or served with this Motion.

## BASIS FOR RELIEF

### A. Bankruptcy Code Section 363 Authorizes Use of Cash Collateral with Consent or Court Approval and Adequate Protection.

20. Bankruptcy Code section 363(c)(2) provides that a debtor-in-possession may use cash collateral if each entity with an interest in the cash collateral consents or if the Court, after notice and a hearing, authorizes the use. Section 363(e) requires the Court, on request of an entity with an interest in property to be used, to condition that use as necessary to provide adequate protection of the entity's interest.

21. Section 363(e) further provides that "on request of an entity that has an interest in property . . . to be used, sold or leased, by the trustee, the court . . . shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." 11 U.S C. § 363(e).

22. Bankruptcy Rule 4001(b) and (d) govern the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration of such motions for cases in which immediate interim relief may be crucial to the success of a reorganization. More simply stated, if the ice cream is melting, cash needs to be made available to turn the freezer back on.

23. Although the Bankruptcy Code does not expressly define "adequate protection," Bankruptcy Code section 361 provides a non-exhaustive list of examples of adequate protection including: (i) a lump sum or periodic cash payments; (ii) replacement liens; and (iii) administrative priority claims. See 11 U.S.C. § 361. Generally, courts decide what constitutes adequate protection on a case-by-case basis. *See Resolution Trust Corp. v. Swedeland Dev. Group, Inc. (In re Swedeland Dev. Group, Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *see also In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993) (citing 2 Collier on Bankruptcy 361.01 [1] at 361-66 (15th ed. 1993) (explaining that adequate protection can take many forms and "must be determined based upon equitable considerations arising from the particular facts of each proceeding").

24. Courts have consistently recognized that the preservation of the going concern value of secured lenders' collateral constitutes adequate protection of such creditors' interest in the collateral. *See, e.g.*, *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 716 (Bankr. D. Del. 1996) (holding that if there is no actual diminution of value of collateral and the debtor can operate post-

petition, then the secured creditor is adequately protected); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis II, Ltd.*, 114 B.R. 138, 143 (Bankr. S.D. Ohio 1990) (same); In re Stein, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the debtors' business); *In re Aqua Assocs*., 124 B.R. 192, 196 (Bankr. E.D. Pa. 1991) ("The important question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is, is being unjustifiably jeopardized.") (citation omitted).

25. Under Bankruptcy Code section 363(p), the Debtor bears the burden of proof on the issue of adequate protection, while the entity asserting an interest in property bears the burden of proof on the validity, priority, and extent of its asserted interest. The relief requested here preserves those burdens and does not adjudicate lien issues on an interim record.

**B. Use of Cash Collateral Is Necessary to Preserve the Estate and Avoid Immediate and Irreparable Harm.**

26. Immediate interim use is necessary to permit uninterrupted operations while parties receive notice and the Court considers final relief. The Debtor's ability to preserve the value of its receivables and business depends upon continued performance of active projects and retention of its workforce. A forced interruption in operations would reduce, rather than preserve, the value of the collateral on which the Potential Cash Collateral Claimants rely.

27. The Budget constrains the use of Cash Collateral to anticipated operating and case-administration expenses and provides the Court and parties in interest a means to evaluate the Debtor's proposed sources and uses of funds. This budgeted use is designed to preserve, rather than dissipate, the Debtor's going-concern and collateral value.

28. If the Debtor is not allowed to continue paying its expenses and operate its assets, such assets will decline in value (or disappear) and will generate no revenue to pay creditors. *In re Las Vegas Monorail Co.*, 429 B.R. 317, 341-42 (Bankr. D. NV 2010) (the debtor's "use of the cash it generates in its operations is itself a form of adequate protection"); *In re 499 W. Warren Street Assocs., Ltd. P'ship*, 142 B.R. 53, 58 (Bankr. N.D.N.Y. 1992) (allowing the use of cash collateral to maintain property); *In re Constable Plaza Associates*, 125 Bankr. 98, 105 (Bankr. S.D.N.Y. 1991) ("debtor's plowing back rents solely for the purpose of maintaining and operating its office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage").

29. Accordingly, the use of Cash Collateral will allow the Debtor to continue its operations, preserve Secured Lenders' collateral and protect Secured Lenders' interests.

**C. Replacement Liens Provide Appropriate Interim Adequate Protection Without Elevating Prepetition Lien Rights.**

30. As interim adequate protection for any proven diminution in value caused by authorized use, the Debtor proposes replacement liens under Bankruptcy Code section 361(2) on postpetition accounts, receivables, cash, and identifiable proceeds of the same type of collateral in which the particular Potential Cash Collateral Claimant proves it held a valid, enforceable, and perfected prepetition interest (the "Replacement Liens"). The Replacement Liens are not intended to grant a lien on a category of property that was not validly encumbered prepetition, to convert an asserted ownership interest into a lien, or to improve any claimant's prepetition priority.

31. The Replacement Liens will attach only (a) in favor of a claimant that establishes a valid, enforceable, and perfected prepetition lien or security interest in Cash Collateral; (b) to the extent of actual diminution in the value of that claimant's interest caused by the Debtor's authorized use of Cash Collateral; (c) to postpetition property of the same nature as, or identifiable

proceeds of, the claimant's validly encumbered prepetition collateral; and (d) with the same relative priority as the claimant's valid prepetition lien, subject to all valid and nonavoidable senior liens and the Carve-Out. The Replacement Liens do not secure any asserted prepetition debt beyond the amount ultimately allowed as secured and do not constitute a determination of the proper characterization of any MCA transaction.

32. The Replacement Liens will not attach to claims or causes of action arising under Bankruptcy Code sections 544, 545, 547, 548, 549, 550, 551, 553(b), 723(a), or 724(a), or to the proceeds of those claims or causes of action. Nor will the Replacement Liens constitute a stipulation that any prepetition lien extends to postpetition property under Bankruptcy Code section 552. The rights of all parties under section 552 are preserved.

33. The Debtor does not propose any interim cash adequate-protection payment. The Debtor submits that the limited Replacement Liens, continued operation of the business, and preservation of the collateral provide appropriate interim protection pending the final hearing, subject to any further evidence and relief the Court may require.

34. The Debtor does not request present allowance of a superpriority administrative claim under Bankruptcy Code section 507(b). If the adequate protection ultimately provided proves inadequate, the rights of any qualifying secured creditor to seek relief under section 507(b), and the rights of the Debtor and other parties to oppose such relief, are preserved.

**D. Subchapter V Trustee and Professional Fee Carve-Out.**

35. The Debtor's ability to reorganize depends on the services of the Subchapter V trustee and Court-approved professionals. The Debtor therefore requests that any Replacement Liens granted under the Interim Order be subject to a carve-out for (a) any monthly deposit, compensation, and expenses of the Subchapter V trustee that are approved by the Court or

otherwise payable pursuant to an applicable order; and (b) allowed fees and expenses of professionals retained by the Debtor under Court order, in each case only to the extent payment is authorized by the Court (the "Carve-Out").

**E. The Motion Does Not Seek Extraordinary Cash-Collateral Provisions or Adjudication of Prepetition Rights.**

36. The Debtor does not seek a roll-up of prepetition debt, cross-collateralization securing prepetition debt with unrelated postpetition property, a priming lien, a waiver of Bankruptcy Code section 506(c), a waiver of the estate's rights under the equities exception in section 552(b), a release of any lender or other party, a waiver of challenge rights, a lien on avoidance actions or their proceeds, or any determination of the amount, validity, enforceability, perfection, priority, or extent of a prepetition claim or lien.

37. Nothing in the Motion or any order granting interim relief should be construed to prejudice the Debtor, the Subchapter V trustee, the U.S. trustee, any creditor, or any other party in interest from investigating or challenging any asserted secured claim or lien, or from seeking modification of adequate-protection terms based on the evidentiary record at the final hearing.

**REQUEST FOR INTERIM AND FINAL RELIEF**

38. Bankruptcy Rule 4001(b)(2)(A) permits the Court to conduct a preliminary hearing before the expiration of the fourteen-day period following service of a cash-collateral motion and, after that hearing, to authorize use of the cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing. Bankruptcy Rule 6003 likewise permits first-day relief where necessary to avoid immediate and irreparable harm.

39. The standard is satisfied here. Without interim access to the cash generated by its operations, the Debtor risks an immediate interruption of payroll and active projects, which would impair receivable collections, customer relationships, and going-concern value before a final

hearing can be held. The requested interim use is limited by the Budget and the adequate-protection terms described above.

40. The Subchapter V Procedures provide that, on motion by the debtor, the Court will conduct a First Day Matter hearing (or a prompt hearing if not treated as a First Day Matter) to consider interim use of cash collateral. Appendix L-1020.2-1, § II.C.1. Consistent with those Procedures and Local Rule 9014-1(e), the Debtor will separately request expedited consideration and provide notice of any first-day hearing by the most expeditious means reasonably available.

41. The Debtor requests that the Court schedule a final hearing no earlier than fourteen days after service of this Motion, as required by Bankruptcy Rule 4001(b)(2)(A). At least five days before the final hearing, the Debtor will file the detailed monthly cash-flow projection covering not less than 120 days required by the Subchapter V Procedures and a proposed Final Order together with a redline showing changes from the Interim Order.

42. Because Bankruptcy Rule 6004(h) expressly concerns orders authorizing the use, sale, or lease of property other than cash collateral, no waiver of Rule 6004(h) is requested or necessary for the cash-collateral relief sought in this Motion.

## RESERVATION OF RIGHTS

43. Nothing contained in this Motion is intended or should be construed as (a) an admission as to the validity, amount, enforceability, perfection, scope, or priority of any claim or lien; (b) a waiver of the Debtor's or any other party's right to dispute any claim or lien; (c) an assumption or rejection of any executory contract or unexpired lease; (d) a waiver of any claim, defense, counterclaim, setoff, recoupment right, avoidance action, or other cause of action belonging to the Debtor or estate; or (e) authority to pay any prepetition claim except as separately authorized by the Court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court (i) enter an Interim Order authorizing the Debtor to use Cash Collateral in accordance with the Budget and on the adequate-protection terms described herein; (ii) schedule a final hearing in accordance with Bankruptcy Rule 4001(b)(2) and the Subchapter V Procedures; (iii) after appropriate notice and the final hearing, enter a Final Order authorizing continued use of Cash Collateral on terms approved by the Court; and (iv) grant such other and further relief as the Court deems just and proper

Dated: August 7, 2026.

Respectfully submitted,

*/s/ Brandon J. Tittle*
Brandon J. Tittle
Texas Bar No. 24090436
Manolo R. Santiago
Texas Bar No. 24129258
**TITTLE SANTIAGO, PLLC**
1125 Legacy Dr., Ste. 230
Frisco, Texas 75034
Telephone: 972.213.2316
Email: btittle@tittlesantiago.com
Email: msantiago@tittlesantiago.com

**PROPOSED COUNSEL FOR DEBTOR AND DEBTOR-IN-POSSESSION**

## CERTIFICATE OF SERVICE

I certify that on August 7, 2026, I cause a copy of the foregoing document to be served via U.S. First Class mail to all parties listed on the attached creditor matrix, via overnight mail to the Personal Property Secured Creditors, and by the Electronic Case Filing System for the United States Bankruptcy Court for the Eastern District of Texas.

*/s/ Brandon J. Tittle*
Brandon J. Tittle

A-1 Building Supply
4445 Canyon Dr.
Amarillo, TX 79110

ABC Supply Company
P.O. Box 842450
Dallas, TX 75284

Ally Bank
P.O. Box 380902
Minneapolis, MN 55438

Capital One Bank
4515 N Santa Fe Ave
Oklahoma City, OK 73118

Cedar Advance LLC
5401 Collins Ave. CU-9A
Miami Beach, FL 33140

Central Hardwoods
1959 W. Northwest Hwy
Dallas, TX 75220

Chase Auto Finance
P.O. Box 650351
Dallas, TX 75265

Dakota Premium Hardwoods
P.O. Box 840764
Dallas, TX 75284

Dealers Electrical Supply
P.O. Box 2535
Waco, TX 76702

Forward Financing LLC
53 State St. 20th Floor
Boston, MA 02109

Fox Funding Group LLC
803 S 21 Ave.
Hollywood, FL 33020

G an G Funding Group LLC
57 West 57th St. 4th Floor
New York, NY 10019

Headway Capital
175 W Jackson Blvd Suite 1000
Chicago, IL 60604

Hill County Tax Office
305 S. San Jacinto
Whitney, TX 76692

Home Depot Credit Services
P.O. Box 658226
Dallas, TX 17936

Itasca Landfill, Republic Services
P.O. Box 677839
Dallas, TX 75267

JPMorgan Chase Bank
c/o National Bankruptcy Services
P.O. Box 9013
Addison, TX 75001

KHBR
335 Country Club Dr.
Hillsboro, TX 76645

Lowes
P.O. Box 530970
Atlanta, GA 30353

LW RV Park & Mini Warehouse
P.O. Box 591
Whitney, TX 76692

Ocean Funding Corp.
2941 West Cypress Creek Rd. Suite 101
Fort Lauderdale, FL 33309

Redwoods, Inc.
623 Esther Street
Waco, TX 76710

Rugby
920 Ave. R.
Grand Prairie, TX 75050

Samson MCA LLC
17 State Street, Suite 630
New York, NJ 10004

SRM Concrete
200 Sims Dr.
Whitney, TX 76692

Sunbelt Rentals
7011 Woodway Dr.
Woodway, TX 76712

Texas Comptroller of Public Accounts
Bankruptcy Collection Division MC-008
P.O. Box 12548 MC-008
Austin, TX 78711

TFNB
Attn: Legal / Bankruptcy Department
901 S. 8th Street
Waco, TX 76706

Trader Vic's Mini Storage
486 FM 1713
West, TX 76691

U.S. Small Business Administration
Office of General Counsel
312 North Spring Street, 5th Floor
Los Angeles, CA 90012

United Rentals
P.O. Box 840514
Dallas, TX 75284

Windstream
P.O. Box 9001908
Louisville, KY 40290

Wood Finishers Depot
5215 Sjolander Rd.
Baytown, TX 77521

# EXHIBIT A

## Interim Budget

**Double D**
**Cash Flow Forecast**

| | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending | Week Ending |
|---|---|---|---|---|---|---|---|---|
| | **7-Aug** | **14-Aug** | **21-Aug** | **28-Aug** | **4-Sep** | **11-Sep** | **18-Sep** | **25-Sep** |
| ***Beginning Cash*** | **184,500** | **151,611** | **366,363** | **356,363** | **322,548** | **285,119** | **252,591** | **469,411** |
| ***Receipts*** | | | | | | | | |
| Progress Billings | - | 247,280 | - | - | - | - | 247,280 | - |
| Other Cash Collections | - | - | - | - | - | - | - | - |
| **Total Receipts** | **-** | **247,280** | **-** | **-** | **-** | **-** | **247,280** | **-** |
| **Operating Dispersements** | | | | | | | | |
| **Payroll and Benefits** | | | | | | | | |
| W2 Employees | 20,460 | 20,460 | | 20,460 | | 20,460 | 20,460 | |
| **Total Payroll and Benefits** | **20,460** | **20,460** | **-** | **20,460** | **-** | **20,460** | **20,460** | **-** |
| **Operating Expenses** | | | | | | | | |
| **Costs of Goods Sold** | | | | | | | | |
| Materials & Supplies | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 | 6,000 |
| **Total Vendors** | **6,000** | **6,000** | **6,000** | **6,000** | **6,000** | **6,000** | **6,000** | **6,000** |
| **Company Insurance** | | | | | | | | |
| Insurance Policy | 2,429 | | | | 2,429 | | | |
| **Total Insurance** | **2,429** | **-** | **-** | **-** | **2,429** | **-** | **-** | **-** |
| **Other Operating Expenses** | | | | | | | | |
| Rent | - | - | - | 700 | - | - | - | 700 |
| Utilities | - | - | - | 600 | - | - | - | 600 |
| QuickBooks | - | - | - | 450 | - | - | - | 450 |
| Vehicle Loans | - | 2,069 | - | - | | 2,069 | - | - |
| Mortgage | - | - | - | 1,605 | - | - | - | - |
| **Total Other Operating Expenses** | **-** | **2,069** | **-** | **3,355** | **-** | **2,069** | **-** | **1,750** |
| **Total Operating Expenses** | **28,889** | **28,529** | **6,000** | **29,815** | **8,429** | **28,529** | **26,460** | **7,750** |
| **Net Cashflow** | **(28,889)** | **218,752** | **(6,000)** | **(29,815)** | **(8,429)** | **(28,529)** | **220,820** | **(7,750)** |
| **Bankruptcy Related Expenses** | | | | | | | | |
| US Trustee (This is a placeholder) | | | | | | | | |
| Potential Adequate Protection Payment | | | | | | | | |
| Debtors Counsel - Tittle Law Group (estimate) | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| Financial Advisor - Armanino Advisory (estimate) | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Critical Vendor True Ups? (is this needed) | - | - | - | - | 25,000 | - | - | - |
| **Total Bankrutpcy Related Expenses** | **4,000** | **4,000** | **4,000** | **4,000** | **29,000** | **4,000** | **4,000** | **4,000** |
| **Other Sources of Funds** | | | | | | | | |
| Cash from Subsidiaries | | | | | | | | |
| DIP Draw | | | | | | | | |
| DIP Repayments | | | | | | | | |
| **Total Other Sources of Funds** | **-** | **-** | **-** | **-** | **-** | **-** | **-** | **-** |
| Book Cash Beginning Balance | 184,500 | 151,611 | 366,363 | 356,363 | 322,548 | 285,119 | 252,591 | 469,411 |
| **Total Net Cash Flow** | **(32,889)** | **214,752** | **(10,000)** | **(33,815)** | **(37,429)** | **(32,529)** | **216,820** | **(11,750)** |
| **Book Cash Ending Balance** | **151,611** | **366,363** | **356,363** | **322,548** | **285,119** | **252,591** | **469,411** | **457,661** |