**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | **Case No. 26-60765** |
| **DOUBLE D SOLUTIONS AND** | § | |
| **DEVELOPMENT, LLC,** | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **Debtor.** | § | |

**INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL OF EXISTING SECURED LENDER, (II) GRANTING ADEQUATE PROTECTION FOR USE THEREOF, (III) MODIFYING THE AUTOMATIC STAY TO ALLOW FOR THE RELIEF REQUESTED HEREIN AND (IV) SCHEDULING FINAL HEARING**

Upon consideration of the *Debtor's Motion for Entry of Interim and Final Orders (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Scheduling a Final Hearing* (the "Motion") filed by Double D Solutions and Development, LLC, the debtor and debtor-in-possession (the "Debtor"); the Court having conducted a preliminary hearing on ____________, 2026, at ______ _.m. Central Time (the "Interim Hearing"); the Court having jurisdiction under 28 U.S.C. §§ 157 and 1334; this matter being a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), and (O); venue being proper under 28 U.S.C. §§ 1408 and 1409; notice of

the Motion and the Interim Hearing being sufficient for the interim relief granted herein under the circumstances; and after consideration of the Motion, the record of the Interim Hearing, and the applicable law, the Court finds that good cause exists for the interim relief set forth below.

**FINDINGS**

A. On August 7, 2026 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and elected to proceed under subchapter V. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to Bankruptcy Code section 1184.

B. The Debtor is an operating alteration and remodeling construction business, including custom woodwork and molding, and employs approximately sixteen employees. Its continued operations depend on completing active projects, retaining its workforce, and collecting accounts and receivables.

C. The Debtor has insufficient unencumbered liquidity to fund ordinary operations pending a final hearing. Immediate interim use of cash generated through the Debtor's operations is necessary to avoid disruption of payroll and active projects, impairment of receivable collections and customer relationships, and a resulting reduction in the Debtor's going-concern and collateral value. The requirements of Bankruptcy Rule 4001(b)(2)(A) and, to the extent applicable, Bankruptcy Rule 6003 are satisfied.

D. Based on the Debtor's books and records, the Debtor has identified the following parties as holding or asserting liens or other security interests in personal property: Headway Capital; The First National Bank of McGregor ("TFNB"); the U.S. Small Business Administration ("SBA"); G and G Funding Group LLC; Cedar Advance; Forward Financing LLC; Fox Funding; Samson MCA LLC; and Ocean Funding Corp. (collectively, the "Personal Property Secured

Creditors”). The Debtor has provided notice to those parties out of an abundance of caution.

E. For purposes of this Interim Order, “Potential Cash Collateral Claimant” means a Personal Property Secured Creditor, but only to the extent that such creditor holds a valid, enforceable, and perfected prepetition lien or security interest in property constituting Cash Collateral. “Cash Collateral” has the meaning provided in Bankruptcy Code section 363(a). Nothing in the Motion or this Interim Order constitutes a finding or admission that any Personal Property Secured Creditor has an interest in Cash Collateral.

F. The Debtor has not stipulated, and the Court does not determine on this interim record, the amount, allowance, characterization, validity, enforceability, perfection, scope, extent, or priority of any asserted claim, lien, security interest, ownership interest, or other right. With respect to any merchant cash advance transaction, nothing herein determines whether the transaction is a true sale, loan, secured financing, or other form of transaction, or whether any counterparty owns any postpetition receivable or collection.

G. The Debtor has submitted a detailed weekly cash-flow budget for the interim period (the “Budget”), which is attached as **Exhibit A** to the Motion and is incorporated herein by reference. The Budget identifies the sources and uses of cash that the Debtor represents are necessary to continue operations and administer this case pending a final hearing.

**IT IS THEREFORE ORDERED THAT:**

**Interim Use of Cash Collateral**

1. The Motion is GRANTED on an interim basis solely to the extent provided in this Interim Order.

2. Subject to the terms of this Interim Order, the Debtor is authorized under Bankruptcy Code section 363(c)(2) to collect and use Cash Collateral from entry of this Interim

Order through the earliest of: (a) 11:59 p.m. Central Time on August 28, 2026; (b) entry of a final order governing the use of Cash Collateral; (c) conversion or dismissal of this Chapter 11 Case; or (d) further order of the Court (the "Interim Period").

3. During the Interim Period, the Debtor may use Cash Collateral solely in accordance with the Budget for ordinary and necessary postpetition operating and case-administration expenses. Nothing in this Interim Order authorizes payment of any prepetition claim unless that payment is separately authorized by the Bankruptcy Code or another order of this Court. Any payment authorized by a separate first-day order remains subject to the Budget and this Interim Order to the extent Cash Collateral is used.

4. Nothing in this Interim Order authorizes the sale or other disposition of property outside the ordinary course of business, the incurrence of postpetition financing, or any use of Cash Collateral other than as expressly provided herein.

**Limited Adequate Protection and Replacement Liens**

5. As interim adequate protection under Bankruptcy Code sections 361 and 363(e), each Potential Cash Collateral Claimant is granted a replacement lien (each, a "Replacement Lien") only: (a) to the extent that the claimant establishes a valid, enforceable, and perfected prepetition lien or security interest in Cash Collateral; (b) to the extent of any actual diminution in the value of that claimant's interest attributable to the Debtor's authorized use of Cash Collateral during the Interim Period; and (c) on postpetition accounts, receivables, cash, and identifiable proceeds of the same nature as, or identifiable proceeds of, the collateral in which the claimant establishes that it held such valid prepetition interest.

6. Each Replacement Lien shall have the same relative priority, and no greater priority, than the claimant's valid prepetition lien, and shall remain subject to all valid, perfected,

unavoidable liens that were senior as of the Petition Date and to the Carve-Out described below. No Replacement Lien grants a lien on a category of property not validly encumbered prepetition, converts an asserted ownership interest into a lien, improves a claimant's prepetition priority, or secures prepetition debt beyond the amount ultimately allowed as secured.

7. To the extent granted by this Interim Order, the Replacement Liens shall be deemed effective and perfected upon entry of this Interim Order without the need for filing or recording any financing statement or other instrument. No modification of the automatic stay is granted or required by this Interim Order for that purpose.

8. The Replacement Liens do not attach to claims or causes of action arising under Bankruptcy Code sections 544, 545, 547, 548, 549, 550, 551, 553(b), 723(a), or 724(a), or to the proceeds of any such claims or causes of action. Nothing herein is a stipulation that any prepetition lien extends to postpetition property under Bankruptcy Code section 552, and all rights under section 552, including section 552(b), are preserved.

9. No cash adequate-protection payment is authorized by this Interim Order. No superpriority administrative expense claim under Bankruptcy Code section 507(b) is presently allowed. If the adequate protection provided by this Interim Order ultimately proves inadequate, any qualifying creditor's right to seek relief under section 507(b), and all rights to oppose such relief, are preserved.

**Carve-Out**

10. The Replacement Liens are subject to a carve-out (the "Carve-Out") for: (a) any monthly deposit, compensation, and expenses of the Subchapter V trustee approved by the Court or otherwise payable under an applicable order; and (b) allowed fees and expenses of professionals retained by the Debtor under Court order, in each case only to the extent payment is authorized by

the Court and permitted under the Budget. Nothing herein authorizes payment of professional fees or trustee compensation without any otherwise-required application, notice, hearing, or order, and all rights to object to such fees and expenses are preserved.

**No Extraordinary Relief; Reservation of Rights**

11. This Interim Order does not grant or approve any roll-up of prepetition debt, cross-collateralization of prepetition debt with unrelated postpetition property, priming lien, release of any creditor or other party, waiver of challenge rights, waiver of Bankruptcy Code section 506(c), waiver of the estate's rights under the equities exception in section 552(b), lien on avoidance actions or their proceeds, or determination of the amount, validity, enforceability, perfection, priority, or extent of any prepetition claim or lien.

12. The burdens of proof established by Bankruptcy Code section 363(p) are preserved. The Debtor, the Subchapter V trustee, the United States Trustee, creditors, and other parties in interest retain all rights to investigate and challenge any asserted claim, lien, security interest, ownership interest, or other right, including the characterization of any merchant cash advance transaction.

13. Nothing in this Interim Order primes, subordinates, or otherwise alters the priority of any valid, perfected, unavoidable statutory lien or other lien that was senior as of the Petition Date. All parties reserve their rights concerning the validity, amount, extent, and priority of any such lien.

14. Nothing in this Interim Order modifies the automatic stay under Bankruptcy Code section 362, releases any claim or cause of action belonging to the Debtor or the estate, constitutes an assumption or rejection of an executory contract or unexpired lease, or constitutes an admission as to any claim or defense.

15. Nothing herein prevents any Potential Cash Collateral Claimant from seeking additional or different adequate protection, relief from the automatic stay, or other relief on an appropriate evidentiary record. Nothing herein prevents the Debtor or any other party in interest from opposing such relief or seeking modification of this Interim Order. All such rights are expressly preserved.

**Termination and Effect**

16. The Debtor's authority to use Cash Collateral under this Interim Order shall terminate automatically upon expiration of the Interim Period. Conversion or dismissal of this case, entry of an order removing the Debtor as debtor-in-possession under Bankruptcy Code section 1185, entry of a final cash-collateral order, or other further order of the Court shall also terminate or supersede the authority granted herein as provided in the applicable order.

17. Unless otherwise ordered by the Court, termination or modification of this Interim Order shall not affect the validity of payments made in good faith and in accordance with this Interim Order before the effective time of such termination or modification, or the Replacement Liens, if any, that attached under the terms of this Interim Order with respect to such authorized use. This paragraph does not validate any prepetition claim or lien or expand the scope of any Replacement Lien.

**Final Hearing and Further Filings**

18. A final hearing on the Motion (the "Final Hearing") shall be held on ___________________, 2026, at ______ _.m. Central Time, in the manner and at the location specified in the Court's notice of hearing. The Final Hearing shall not commence earlier than fourteen days after service of the Motion, as required by Bankruptcy Rule 4001(b)(2)(A).

19. Objections, if any, to final relief shall be filed no later than __________________,

2026, and served on the Debtor's counsel, the United States Trustee, the Subchapter V trustee, each Personal Property Secured Creditor, and any other party entitled to notice under the Bankruptcy Rules, Local Rules, or further order of the Court.

20. At least five days before the Final Hearing, the Debtor shall file: (a) the detailed, line-item monthly cash-flow projection covering not less than 120 days required by Appendix L-1020.2-1, § II.C.3 of the Procedures for Subchapter V Cases Filed in the Western District of Texas; and (b) a proposed final cash-collateral order together with a redline showing changes from this Interim Order, as required by Appendix L-1020.2-1, § II.C.4.

21. The Debtor shall promptly serve notice of the Final Hearing and a copy of this Interim Order on the Office of the United States Trustee for the Western District of Texas; the Subchapter V trustee, if appointed; each Personal Property Secured Creditor; each additional lienholder identified by the UCC lien search or other lien review, including any taxing authority; the Debtor's twenty largest unsecured creditors; any committee appointed in this case and its counsel; and all parties that have filed a notice of appearance or request for notice. Service on the SBA and the United States shall comply with Bankruptcy Rule 7004(b)(4) and (5), as applicable.

**Miscellaneous**

22. This Interim Order is effective and enforceable immediately upon entry.

23. To the extent of any conflict between the Motion and this Interim Order, this Interim Order controls.

24. The Court retains jurisdiction to interpret, implement, and enforce this Interim Order and to adjudicate all matters arising from or relating to it.

# # # END OF ORDER # # #